UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

WAYNE A TAUZIER, JR.                          CIVIL ACTION

VERSUS                                        CASE NO. 15-1634

ADFINES EAST, et al.                          SECTION: "G"(5)

ORDER

Pending before the Court is Defendant Southtank Three Shipping Corp. Ltd. ("Southtank") "Motion for Summary Judgment."[1] Having considered the motion, the memoranda in support and in opposition, the applicable law, and the record, the Court will grant the motion.

I. Background

In this litigation, Plaintiff Wayne A. Tauzier, Jr. ("Tauzier"), a marine technician helper employed by Fire Protection Service, Inc. ("FPS") alleges that he was injured in a fall while he inspected and tested the $CO_2$ fire suppression system aboard the M/V ADFINES EAST ("Vessel"), owned by Southtank.[2] On June 12, 2014, Tauzier, along with Kenneth McDonald ("McDonald"), another FPS marine technician, boarded the Vessel to inspect and test the vessel's fire equipment and were escorted to the vessel's $CO_2$ room by a vessel crew member.[3] The vessel crew, however, did not aid or assist the FPS personnel in performing the system inspection or testing.[4]

The Vessel's $CO_2$ room consisted of a center walkway with three rows of cylinders running

---

[1] Rec. Doc. 22.

[2] Rec. Doc. 1 at 2.

[3] Rec. Doc. 26-2 at 2.

[4] *Id.*

1

forward to aft on either side of the aisle.[5] While attempting to reach the row of cylinders furthest from the center aisle—Row C—, Tauzier stepped on an L-shaped securing bracket, which was secured to a threaded rod running through the center of each securing bracket.[6] The center rod was secured to the securing bracket by a nut.[7] Each L-shaped angle iron was two to three feet long and fixed in a horizontal position.[8]

As part of the normal FPS procedure to test the Vessel's $CO_2$ system, the FPS employees inserted a safety pin into the valve at the top of each cylinder.[9] On June 12, 2014, Tauzier was inserting safety pins into the $CO_2$ cylinder valves on the right side of the aisle, while McDonald was doing the same work on the cylinders on the left side of the aisle.[10] Although Plaintiff was able to insert safety pints into the cylinder valves of the tanks in the two rows closest to the aisle— Rows A and B—, he was unable to reach the valves on the Row C cylinders due to his height and the length of his arm.[11] Therefore, in order to reach the Row C cylinders, Tauzier stood on the lower angle iron securing brackets that held the cylinders in place.[12] Before stepping on each angle iron, Plaintiff checked the security of the securing bracket by pushing down on one end of the angle iron with one hand and pulling up the other end of the angle iron with the other hand.[13]

---

[5] *Id.* at 3.

[6] *Id.*

[7] *Id.*

[8] *Id.* at 4.

[9] *Id.*

[10] *Id.*

[11] *Id.* at 5.

[12] *Id.*

[13] *Id.*

Plaintiff did so because he knew that the bracket might move and that one of the risks of stepping on the brackets was that it could move or shift under his weight.[14]

Just prior to his accident, Tauzier performed a check on the lower securing bracket from which he subsequently fell, and felt that the angle iron was tight and firmly in place, and did not move from its horizontal position.[15] Before the accident, he stepped onto the angle iron securing bracket and straddled the center rod and nut with one foot on each end of the bracket, and did not feel the bracket move while he was straddling the center bolt.[16] However, perhaps after Plaintiff shifted his feet by picking up one foot to move it, the securing bracket shifted from its horizontal position to vertical, although it did not break.[17] Although Tauzier was holding onto piping above the cylinders with his left hand to brace himself, once the securing bracket suddenly shifted, Plaintiff's feet fell to the deck and he injured his left shoulder.[18]

Plaintiff filed a complaint in this matter alleging that Southtank was negligent under 33 U.S.C. § 905(b) on May 14, 2015.[19] On March 1, 2016, Southtank filed the instant motion for summary judgment.[20] Tauzier filed a memorandum in opposition on March 8, 2016,[21] to which

---

[14] *Id.*

[15] *Id.*

[16] *Id.* at 6.

[17] *Id.*

[18] *Id.*

[19] Rec. Doc. 1.

[20] Rec. Doc. 22.

[21] Rec. Doc. 26.

Southtank filed a reply on March 16, 2016.[22]

## II. Parties' Arguments

### A.    Defendant's Arguments in Support of Motion for Summary Judgment

In its motion, Southtank argues that the law is patently clear that a vessel owner is under no duty to protect a contractor's employee from risks that were inherent in carrying out the contractor's repairs, inspection, and testing aboard the vessel, and the contractor is responsible for making sure his employees perform those operations safely.[23] Southtank avers that Plaintiff has the burden of proving that Southtank was negligent pursuant to 33 U.S.C. § 905(b), and that the Fifth Circuit has repeatedly affirmed summary judgments dismissing claims like the ones in this case.[24] According to Southtank, the undisputed material facts in this case establish that Plaintiff cannot carry his burden of proof under § 905(b) because there is no evidence that the Vessel breached any of the very limited duties owed by a vessel under § 905(b).[25]

Southtank contends that Tauzier was an employee subject to the Longshore & Harbor Workers Compensation Act ("LHWCA"), and in *Scindia Steam Navigation Co. v. De Los Santos*[26] and *Howlett v. Birkdale Shipping Co.*,[27] the U.S. Supreme Court articulated the scope of a vessel's

---

[22] Rec. Doc. 33.

[23] Rec. Doc. 22-1 at 1.

[24] *Id.* at 9 (citing *Pimental v. LTD Canadian Pac. Bul*, 965 F.2d 13 (5th Cir. 1992); *Hunter v. Intreprinderea De Explore Flott Maritime Navrom*, 868 F.2d 1386 (5th Cir. 1989); *Teply v. Mobil Oil Corp.*, 859 F.2d 375 (5th Cir. 1988); *Futo v. Lykes Bros. S.S. Co.*, 742 F.2d 209 (5th Cir. 1984); *Meserole v. S/B FINA BELGIQUE*, 736 F.2d 147 (5th Cir. 1984)).

[25] *Id.* at 9–10.

[26] 451 U.S. 156 (1981).

[27] 512 U.S. 92 (1994).

duties to longshoremen and harbor workers under § 905(b).[28] Southtank argues that, under Fifth Circuit precedent, a vessel's § 905(b) duties to LHWCA-covered workers aboard a vessel are "narrow."[29] Southtank avers that *Scindia* and *Howlett* established that the starting point for any discussion of a vessel's potential liability under § 905(b) is the recognition that the contractor has the overriding responsibility for the safety of its workers.[30]

Southtank quotes the Supreme Court's decision in *Scindia*, which explained that a stevedore was required to provide "a reasonably safe" place to work and to take such safeguards with respect to equipment and working conditions as necessary to avoid injury to longshoremen, but the ship owes no such duty to them, and a vessel may rightfully expect that a stevedore would perform his task properly without supervision by the ship.[31] Southtank also relies on *Helaire v. Mobil Oil Corp.*, in which the Fifth Circuit stated that "[t]he most basic principle which emerges from *Scindia* is that the primary responsibility for the safety of the longshoremen rests upon the stevedore."[32] Therefore, Southtank argues, although FPS is statutorily required by 33 U.S.C. § 941 to provide its employees with a reasonably safe place of employment and to furnish equipment reasonably necessary to protect the safety of its employees, the Supreme Court and the Fifth Circuit have consistently recognized that it is the duty of the employer, such as FPS, and not the vessel owner, to require an employee, such as Tauzier, to use safety equipment.[33]

---

[28] Rec. Doc. 22-1 at 10.

[29] *Id.* (citing *Greenwood v. Societe Francaise De*, 111 F.3d 1239, 1249 (5th Cir. 1997)).

[30] *Id.* at 10–11 (citing 33 U.S.C. § 941; *Randolph v. Laesiz*, 896 F.2d 964, 970 (5th Cir. 1990)).

[31] *Id.* at 11 (citing *Scindia*, 451 U.S. at 170).

[32] *Id.* (quoting 709 F.2d 1031, 1036 (5th Cir. 1983)).

[33] *Id.* at 11–12 (citing *Hill v. Texaco, Inc.*, 674 F.2d 447, 451 (5th Cir. 1982); *Morris v. Compagnie Maritime des Chargeurs Reunis*, 832 F.2d 67, 71 (5th Cir. 1987)).

According to Southtank, *Scindia* and *Howlett* also made clear that a vessel owner need not monitor the independent contractor's operations, but rather can rely on the contractor to exercise reasonable care to carry out its work with reasonable safety.[34] Southtank asserts that *Scindia* further established that the vessel is entitled to assume that the independent contractor and its employees are "expert and experienced" and will themselves exercise reasonable care to carry on their work with reasonable safety.[35] Moreover, Southtank argues, the ship owner can rely on the contractor's judgment that a condition of the vessel and its equipment, though dangerous, is safe enough.[36] Therefore, Southtank asserts, although the employer has a broad, primary duty to ensure its employees' safety, a ship owner's duty to an independent contractor's employees is "narrow."[37] According to Southtank, a ship owner can be liable under § 905(b) only in three limited circumstances:

1.    If the vessel owner fails to warn on turning over the ship of hidden defects of which he should have known, but which a reasonably careful expert contractor would not be expected to discover—the "Turnover Duty";

2.    For injury caused by hazards under the active control of the ship—the "Active Control Duty"; and

3.    If the vessel owner fails to intervene in the contractor's operat[ions] when he has <u>actual knowledge</u> both of an unreasonable hazard and that the contractor, in the exercise of "obviously improvident" judgment, intends to

---

[34] *Id.* at 12 (citing *Scindia*, 451 U.S. at 170).

[35] *Id.* (citing *Morris*, 832 F.2d at 71).

[36] *Id.* at 13 (citing *Greenwood v. Societe Francaise De*, 111 F.3d 1239, 1249 (5th Cir. 1997); *Randolph v. Laeisz*, 896 F.2d 964, 971 (5th Cir. 1990)).

[37] *Id.* (citing *Greenwood*, 111 F.3d at 1249; *Singleton v. Guangzhou Ocean Shipping Co.*, 79 F.3d 26, 28 (5th Cir. 1996)).

work on in the face of it, and therefore cannot be relied on to remedy it—
the "Duty to Intervene."[38]

Here, Southtank argues, the only possible duty at issue is the Turnover Duty.[39] According to Southtank, the Active Control Duty is inapplicable because a prerequisite for application of the duty is "actual control by the vessel over the actual methods and operative details" of the repairman's work, and the undisputed evidence in this case establishes that the Vessel's $CO_2$ room had been turned over to the FPS personnel and was not under the Vessel's actual control at the time of the incident.[40] In addition, Southtank contends, the Duty to Intervene is inapplicable because there is no evidence suggesting that any member of the vessel's crew actually knew that Plaintiff and McDonald were standing on securing brackets at the time of the incident, and Plaintiff testified that no vessel crewmember was present in the $CO_2$ room at the time of his accident.[41] Southtank argues that there is similarly no evidence that the Vessel's crew had actual knowledge that the activity of standing on a securing bracket presented an unreasonable risk of harm to an expert and experienced technician exercising reasonable care, or that FPS was acting "obviously improvident[ly]" in failing to protect Plaintiff from the potential hazard.[42]

Therefore, Southtank avers, Plaintiff can only recover on his § 905(b) claim if he establishes that Southtank breached the *Scindia* Turnover Duty, which, although ordinarily narrow,

---

[38] *Id.* (citing *Greenwood*, 111 F.3d at 1245; *Pimental v. LTD Canadian Pac. Bul*, 965 F.2d 13, 15 (5th Cir. 1992)).

[39] *Id.*

[40] *Id.* at 13–14 (citing *Clay v. Daiichi Shipping*, 74 F. Supp. 2d 665, 673 (E.D. La. 1999); *Aguillar v. Bollinger Shipyards, Inc.*, 833 F. Supp. 2d 582, 592 (E.D. La. 2011)).

[41] *Id.* at 14 (citing *Greenwood*, 111 F.3d at 1248).

[42] *Id.*

is "subtly altered" to be even narrower when applied to employees of a repair contractor, such as Tauzier.[43] According to Southtank, the general rule is "that a ship may not be found negligent merely because a condition of the ship that requires repair or inspection injures the person hired to inspect or repair that condition."[44] Southtank relies on *Hill v. Texaco, Inc.*, in which the Fifth Circuit overturned a district court decision in favor of a plaintiff who fell 30 feet while carrying out ultrasonic testing aboard a vessel, finding that the vessel owner, Texaco, had no duty to supervise the work to make sure it was conducted safely, and was entitled to assume that the contractor would take any necessary steps to provide equipment needed to ensure a "reasonably safe place" for employees to work.[45] Southtank avers that here, as in *Hill*, the FPS operations in the Vessel's $CO_2$ room were underway when Tauzier's accident occurred, and as such, Southtank, just like Texaco, had no duty to supervise the work of the repair contractor to make sure it was conducted safely by the FPS personnel.[46] Therefore, Southtank argues, it was FPS that actually had the duty to require Plaintiff to use safety equipment, including a ladder, when he needed to reach the Row C cylinder valves.[47]

Moreover, Southtank argues, even if its Turnover Duty is not "subtly altered" by Plaintiff's repairman status and his purpose for being aboard the Vessel, Tauzier cannot establish any breach of the traditional Turnover Duty.[48] According to Southtank, the Turnover Duty requires the vessel

---

[43] *Id.* (citing *Stass v. Am. Commercial Lines, Inc.*, 720 F.2d 879, 882 (5th Cir. 1983)).

[44] *Id.* at 15 (citing *Hill v. Texaco, Inc.*, 674 F.2d 447, 452 n.5 (5th Cir. 1982)).

[45] *Id.* at 16 (citing *Hill*, 774 F.2d at 451).

[46] *Id.*

[47] *Id.*

[48] *Id.* at 17.

owner to exercise ordinary care under the circumstances to turn over the vessel and its equipment in such a condition that an expert repairman "mindful of the dangers he should reasonably expect to encounter, arising from the hazards of the ship's service or otherwise" will, by the exercise of ordinary care, be able to perform the operations "with reasonable safety to persons and property."[49] In this case, Southtank asserts, Tauzier was injured when he fell from a securing bracket on which he was standing in the $CO_2$ room, although he knew that the securing bracket was not a step, was unsafe to stand on, presented a danger to him, and could move under his weight while he was standing on it.[50] Southtank avers that Tauzier admitted he knew he should use a ladder, and he did not need a vessel crewmember or a sign to tell him that he should not stand on the bracket.[51]

Furthermore, Southtank avers, the Turnover Duty applies only to "hazards that would be neither obvious to nor anticipated by a competent contractor in the ordinary course of (repair) operations," and clearly there was no latent or hidden defect in the Vessels' $CO_2$ room that caused Plaintiff's accident.[52] According to Southtank, Tauzier admitted that he knew that the bracket could move form horizontal to vertical under his weight, and he tested the bracket prior to stepping on it and determined that it was tight and firmly in place.[53] In fact, Southtank contends, Tauzier conceded that if a vessel crewmember had tested the bracket before turning over the Vessel's $CO_2$ room to the FPS personnel, the crewmember would have found the bracket in a secure position,

---

[49] *Id.* (quoting *Howlett v. Birkdale Shipping Co.*, 512 U.S. 92, 98 (1994)).

[50] *Id.* at 17–18.

[51] *Id.* at 18.

[52] *Id.* (quoting *Howlett*, 512 U.S. at 99).

[53] *Id.*

and acknowledged that there was no defect in the bracket and it did not break under his weight.[54] Therefore, Southtank argues, there was clearly no breach of the Vessel's Turnover Duty because Plaintiff's was mindful of the dangers related to using the securing bracket as a step, and Southtank had no duty to warn him of the potential danger of doing so.[55]

In sum, Southtank contends that although FPS' failure to require Plaintiff and its other employees to use a ladder when they needed to reach a Row C cylinder valve was a breach of FPS' obligation under 33 U.S.C. § 941, FPS' failure to comply with its statutory requirements did not impose liability on Southtank, the vessel owner, under § 905(b) pursuant to the *Scindia* and *Howlett* line of cases.[56]

## B.    *Plaintiff's Arguments in Opposition to Summary Judgment*

In opposition, Tauzier argues that the ship had no ladders or other equipment in the $CO_2$ room that would allow Tauzier to access the third row of cylinders, even though access is not possible without some means of raising oneself to a sufficient height to reach Row C.[57] According to Tauzier, no one has identified the entity who last secured the bracket in question prior to his accident, but he knows that it was neither him nor the other FPS employee, McDonald.[58] Furthermore, Tauzier alleges, there were no signs posted telling personnel not to climb or stand on the brackets, and no ship's personnel told him not to do so.[59] In addition, Plaintiff contends,

---

[54] *Id.*

[55] *Id.* at 19.

[56] *Id.*

[57] Rec. Doc. 26 at 2.

[58] *Id.* at 3.

[59] *Id.*

McDonald testified that the bolts, which are part of the ship's equipment along with the brackets themselves, can get loose from the vibration caused by the ship's engine.[60]

Tauzier acknowledges that neither the master nor the crew of a vessel bears the ultimate responsibility for a plaintiff's safety, as it is well-established that the primary responsibility for the safety of a longshoreman rests upon his employer.[61] However, Plaintiff contends, Southtank clearly violated its Turnover Duty in this case because there is no evidence that the ship exercised reasonable care to turn over the $CO_2$ room in a safe condition.[62] According to Tauzier, Southtank bore two responsibilities: (1) to exercise ordinary care under the circumstances to turn over the ship and its equipment and appliances in such condition that an expert and experienced stevedore can carry on cargo operations with reasonable safety to persons and property, and (2) to warn the stevedore of latent or hidden dangers which are known to the vessel or should have been known to her in the exercise of reasonable care.[63] Plaintiff avers that the crew of the Vessel would have been in a unique position to know the condition of the cylinders and brackets on their own ship, and they knew or should have known that the Row C cylinders could not be accessed without some means of elevating the inspector.[64] Plaintiff contends that if the only means of securing the cylinders is a bracket, then Southtank knew or should have known that these brackets need to either be maintained in a fashion that allows them to be used as a step, provide an alternative step, or at

---

[60] *Id.*

[61] *Id.* at 5 (citing *Stockstill v. Gypsum Transp.*, 607 F.2d 1112 (5th Cir. 1979)).

[62] *Id.* at 6.

[63] *Id.*

[64] *Id.* at 6–7.

least warn people not to use the brackets as a step.[65] However, Tauzier argues, there is no evidence that Southtank took any measures to inspect the $CO_2$ room to insure that the cylinder brackets had not loosened from vibration of the engine.[66]

Thus, Tauzier avers, Southtank failed to turn over the Vessel in a reasonably safe condition and failed to warn him of hidden defects of which it knew or should have known.[67] Plaintiff asserts that there is no evidence that the condition of the bracket was an open or obvious danger that should reasonably be anticipated by a reasonably competent stevedore, and vessel owners have a duty to warn the stevedore of latent or hidden dangers that are known to the owner or should have been known to it in the exercise of reasonable care.[68]

According to Tauzier, Southtank also breached its Duty to Intervene, which applies when a vessel owner: (1) has actual knowledge of the hazard; and (2) has reason to believe that the stevedore improvidently intends to continue working in the face of it.[69] Tauzier acknowledges that the ship owner's responsibility under the *Scindia* duty to intervene "is narrow and requires something more than mere knowledge of a dangerous condition."[70] Plaintiff avers that in order for a stevedore's judgment to appear obviously improvident, that expert stevedore must use an object with a defective condition or follow a procedure that is so hazardous that anyone can tell that its continued use creates an unreasonable risk of harm even when the stevedore's expertise is taken

---

[65] *Id.* at 7.

[66] *Id.*

[67] *Id.*

[68] *Id.* (citing *Richard v. Transocean Drilling*, 2004 U.S. DIST. LEXIS 4727, at *7 (E.D. La. Mar. 22, 2004)).

[69] *Id.*

[70] *Id.* (quoting *Singleton v. Guangzhou Ocean Shipping Co.*, 79 F.3d 26, 28 (5th Cir. 1996)).

into account.[71] Here, Tauzier contends, even if the FPS crew had begun their operation, the ship's personnel had a duty to intervene and advise the FPS personnel of the bracket condition, but no such warning or intervention was ever undertaken.[72] Finally, Plaintiff agrees that the Active Control Duty is not implicated in this case.

## C.      *Defendant's Arguments in Further Support of Summary Judgment*

In reply, Southtank contends that Plaintiff's opposition failed to submit any evidence to support the claim that Southtank breached any *Scindia* duty under § 905(b).[73] Southtank avers that Plaintiff's Statement of Contested Material Facts, as required by Local Rule 56.2, does not create any genuine issues regarding Southtank's *Scindia* duties.[74] According to Southtank, the six statements that Plaintiff has denied have questionable support and are not supported by citations to specific evidence in the record, and/or are not truly material, since the disputed statements deal with minor, ancillary matters that do not impact the legal issues presented in this motion.[75]

Southtank notes that although Plaintiff alleges that "Southtank has clearly violated [its] turnover duties in this case," Tauzier has provided no evidence to substantiate a violation of the Turnover Duty.[76] According to Southtank, Plaintiff "fails to recognize that plaintiff has the burden of proving a violation of the Turnover Duty in this case. Southtank has no obligation to prove it[]

---

[71] *Id.* at 7–8.

[72] *Id.* at 8.

[73] Rec. Doc. 33 at 1.

[74] *Id.* at 2.

[75] *Id.*

[76] *Id.* at 4.

exercised reasonable care prior to turning over the vessel's $CO_2$ room to FPS."[77] Clearly, Southtank contends, it is Tauzier's burden to submit evidence that the vessel owner did not exercise ordinary care before turning over the $CO_2$ room to FPS, that any hazards presented by the brackets in the $CO_2$ room were such that the contractor could not carry out its operations with reasonable safety, and that the condition of the brackets was such that an expert and experienced stevedore would not anticipate the hazard.[78] However, Southtank argues, Plaintiff has offered no such evidence, and in fact admitted that he tested the bracket from which he fell and found it was tight before he stepped on it.[79] In addition, Southtank claims, the evidence provided by Plaintiff himself and his FPS supervisor confirms that they were "mindful of the dangers" presented by the brackets and that they reasonably expected to encounter brackets that might not be tight or secured in place and could move when stepped on.[80] Furthermore, Southtank argues, Plaintiff has presented no evidence that FPS could not have performed the operation in the $CO_2$ room safely by simply requiring its personnel, as it was required to do so by 33 U.S.C. § 941, to use ladders or other devices to protect the safety of its employees.[81]

Next, Southtank contends that Tauzier's contention that the vessel owner breached the Turnover Duty because there were no signs warning the people in the $CO_2$ room not to use the brackets as steps is meritless.[82] According to Southtank, Plaintiff cites no evidence to establish that

---

[77] *Id.*

[78] *Id.* at 5.

[79] *Id.*

[80] *Id.* at 5–6.

[81] *Id.* at 6.

[82] *Id.* at 7.

the Vessel owed any duty to post such signs, and here, both Plaintiff and his supervisor testified

that they knew the danger of stepping on a bracket and did not need a warning sign or a vessel

crew member to tell them that they should not use the bracket as a step.[83] Similarly, Southtank

argues, although Plaintiff alleges that the Vessel should have known that cylinders in Row C could

not be accessed by FPS without some means of elevation, there is no evidentiary support for such

conclusory statements regarding what the crew members knew or should have known about the

job FPS was performing in the record.[84]

Finally, Southtank avers, because Plaintiff was an employee of a repair contractor, the

*Scindia* Turnover Duty is even more limited in this case.[85] Here, Southtank argues, it had no duty

to supervise the FPS operation to make sure that it was performed safely and that FPS utilized

proper safety equipment, as the vessel owner is fully entitled to rely on a contractor to perform its

fire equipment inspection job safely.[86] Southtank also argues that Tauzier has failed to present any

evidence that the Duty to Intervene applies in this case, as there is no evidence that the Vessel's

crew had actual knowledge that the FPS personnel were engaging in any unsafe work practice in

the $CO_2$ room, actual knowledge that the FPS personnel were standing on the brackets in the

Vessel's $CO_2$ room, or actual knowledge that the FPS personnel needed ladders to perform their

---

[83] *Id.*

[84] *Id.* at 8.

[85] *Id.*

[86] *Id.* at 9.

work safely in the $CO_2$ room.[87] Without any evidence of actual knowledge, Southtank contends, Plaintiff cannot prove that the Duty to Intervene was triggered.[88]

### III. Law and Analysis

#### A.    *Legal Standard on Summary Judgment*

Summary judgment is appropriate when the pleadings, the discovery, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[89] When assessing whether a dispute as to any material fact exists, a court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[90] All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[91] If the record, as a whole, could not lead a rational trier of fact to find for the non-moving party, then no genuine issue of fact exists and the moving party is entitled to judgment as a matter of law.[92]

On a motion for summary judgment, the moving party bears the initial burden of identifying those portions of the record that it believes demonstrate the absence of a genuine issue

---

[87] *Id.* at 10.

[88] *Id.*

[89] Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[90] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008).

[91] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

[92] *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986).

of material fact.[93] Where the non-moving party bears the burden of proof at trial, as here, the party moving for summary judgment may meet its burden by showing the Court that there is an absence of evidence to support the non-moving party's case.[94] Thereafter, if the moving party satisfies its initial burden, the burden shifts to the non-moving party to "identify specific evidence in the record, and articulate" precisely how that evidence supports her claims.[95] In doing so, the non-moving party may not rest upon mere allegations or denials in her pleadings, but rather must set forth "specific facts showing the existence of a 'genuine' issue concerning every essential component of its case."[96] The nonmovant's burden of demonstrating a genuine issue of material fact is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence."[97] There is no genuine issue for trial "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."[98]

**B.      *Applicable Law Regarding Vessel Negligence***

The LHWCA establishes a workers' compensation program for longshoremen and other maritime workers injured or killed in work-related accidents, and establishes that this is the exclusive remedy for which an employee can recover from its employer for work-related

---

[93] *Celotex,* 477 U.S. at 323.

[94] *Id.* at 325.

[95] *Forsyth v. Barr,* 19 F.3d 1527, 1537 (5th Cir. 1994), *cert. denied,* 513 U.S. 871 (1994); *see also Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).

[96] *Morris*, 144 F.3d at 380 (citing *Thomas v. Price*, 975 F.2d 231, 235 (5th Cir. 1992)); *see also Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012).

[97] *Little*, 37 F.3d at 1075.

[98] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968)).

accidents.[99] However, although the LHWCA provides the exclusive remedies against employers and generally leaves them immune from suits in tort, it also provides a cause of action against a vessel owner for vessel negligence under § 905(b) of the LHWCA.[100]

The scope of vessel negligence under § 905(b) is limited to the breach of specific duties described by the U.S. Supreme Court in *Scindia Steam Navigation Co., Ltd. v. De Los Santos.*[101] Section 905(b) makes it clear that a vessel owner may not be sued when the injury was caused by the negligence of those performing stevedoring services,[102] since the primary responsibility for a longshoreman's safety rests with the stevedore.[103] In the Fifth Circuit, it is well-established that ship owners may be liable to a longshoreman for vessel negligence under § 905(b) if they violate one of three narrow duties: (1) a turnover duty, (2) a duty to exercise reasonable care in the areas of the ship under the active control of the vessel, and (3) a duty to intervene.[104]

"The turnover duty applies to the ship owner's obligation before or at the commencement of the stevedore's activities."[105] Vessel owners have two responsibilities under the turnover duty. First, the vessel owner must turn over the vessel and its equipment in such a condition that an expert stevedore can perform stevedoring operations with reasonable safety.[106] Second, the vessel

---

[99] 33 U.S.C. § 901, *et seq.*

[100] *See Lormand v. Superior Oil Co.*, 845 F.2d 536, 541 (5th Cir. 1987).

[101] 451 U.S. 156 (1981).

[102] 33 U.S.C. § 905(b); *Levene,* 943 F.2d at 532.

[103] *Robinson v. Orient Marine Co.*, 505 F.3d 364, 365 (5th Cir. 2007) (quoting *Singleton v. Guangzhou Ocean Shipping Co.* 79 F.3d 26, 28 (5th Cir. 1996)).

[104] *Kirksey v. Tonghai Maritime*, 535 F.3d 388, 391 (5th Cir. 2008); *see also Scindia Steam Nav. Co., Ltd. v. De Los Santos*, 451 U.S. 156, 165 (1981).

[105] *Kirksey*, 535 F.3d at 392.

[106] *Id.*

owner must warn the stevedore of hidden or latent dangers that are known or should be known to the vessel owner.[107] However, a vessel owner is not liable if a danger is (1) open and obvious or (2) such that a reasonably competent stevedore should anticipate encountering it.[108] Once the vessel has been turned over to the stevedore, the vessel owner has no general duty to supervise or inspect the operations; instead, the vessel owner may rely on the stevedore to fulfill its statutory duty under 33 U.S.C. § 941 to provide a reasonably safe work environment for the longshoremen.[109] The vessel is also entitled to assume that the independent contractor and its employees are "expert and experienced" and will themselves exercise reasonable care to carry on their work with safety, and may expect that the contractor is as capable as the shipowner of recognizing hazards to which the contractor's employees may be exposed.[110]

Under the active control duty, a vessel owner may be held liable "for injury caused by the hazards under the control of the ship."[111] The active control duty is not implicated in this case.[112] Finally, in the Fifth Circuit, a vessel has a duty to intervene when it has actual knowledge of a dangerous condition and actual knowledge that the stevedore, in the exercise of "obviously improvident" judgment, has failed to remedy it.[113] The duty to intervene "is narrow and requires

---

[107] *Id.*

[108] *Id.* at 392, 395.

[109] *Scindia*, 451 U.S. at 168–69.

[110] *Morris v. Compagnie Mar. Des Chargeurs Reunis, S.A.*, 832 F.2d 67, 69–61 (5th Cir. 1987); *Polizzi v. M/V Zephyros II Monrovia*, 860 F.2d 147, 149 (5th Cir. 1988).

[111] *Pimental v. LTD Canadian Pac. Bul,* 965 F.2d 13, 15 (5th Cir. 1992) (internal citations omitted).

[112] Rec. Doc. 26 at 8

[113] *Pimental*, 965 F.2d at 17.

'something more' than mere shipowner knowledge of a dangerous condition."[114] In fact, the Fifth Circuit has recognized that, in some situations, the vessel owner is entitled to rely on the stevedore's judgment that the condition, "though dangerous, was safe enough."[115] Finally, although *Scindia* and its progeny involve the scenario of an injured longshoreman in the employ of a stevedore, the same principles apply to cases like the instant action that involve repairmen in the employ of non-stevedore contractors working aboard a vessel.[116]

## C. Analysis

Both Tauzier and Southtank agree that Southtank may only be liable to Tauzier if it violated either § 905(b)'s Turnover Duty or the Duty to Intervene, although Southtank avers that the Duty to Intervene is not implicated in this case. Both duties are addressed, in turn, below.

### 1. Turnover Duty

Southtank alleges that it did not violate the Turnover Duty because, in this case, Tauzier boarded the Vessel specifically to make inspections and repairs in the $CO_2$ room, and a ship may not be found negligent "merely because a condition of the ship that requires repair or inspection injures the person hired to inspect or repair that condition."[117] According to Southtank, only FPS, not Southtank, had a duty to require Plaintiff to use safety equipment, including a ladder, when he needed to reach the Row C cylinder valves.[118] In response, Tauzier argues that the ship was

---

[114] *Singleton v. Guangzhou Ocean Shipping Co.*, 79 F.3d 26, 28 (5th Cir. 1996).

[115] *Randolph v. Laeisz*, 896 F.2d 964, 971 (5th Cir. 1990).

[116] *See Levene v. Pintail Enters. BB*, 943 F.2d 528 (5th Cir. 1991); *Hill v. Texaco, Inc.*, 674 F.2d 447, 451 (5th Cir. 1982); *Duvall v. Bopco, L.P.*, No. 15-2404, 2015 WL 7458608, at *4 (E.D. La. Nov. 24, 2015) (Feldman, J.).

[117] Rec. Doc. 22-1at 15 (citing *Hill v. Texaco, Inc.*, 674 F.2d 447, 452 n.5 (5th Cir. 1982)).

[118] *Id.* at 16.

required to provide ladders or other equipment in the $CO_2$ room to allow Tauzier to access the third

row of cylinders, and that furthermore, no signs were posted telling personnel not to climb or stand

on the brackets.[119] Furthermore, Tauzier argues, McDonald has testified that the ship's bolts could

get loose through the vibrations from the ship's engines.[120] Thus, Tauzier claims, Southtank clearly

did not exercise reasonable care in turning over the $CO_2$ room in a safe condition, and did not warn

Tauzier of latent or hidden dangers which were known to the Vessel or should have been known

to her in the exercise of reasonable care.[121]

Very few facts in this matter are in dispute, and to the extent that any are disputed, none

appear to be essential to the resolution of this case.[122] Although Tauzier avers that "[t]here is no

evidence in this case that the ship exercised reasonable care to turn over the CO[2] room in a safe

condition,"[123] as Defendant rightly points out, once Defendant has successfully articulated that

there is no genuine, disputed issue of material fact to preclude summary judgment in its favor, it

is Tauzier's burden rather than Defendant's, at trial, to prove that Southtank violated its obligation

pertaining to the Turnover Duty.[124] The main evidence presented by Tauzier to suggest a breach

of the duty to turn over the vessel and its equipment in such a condition that an expert stevedore

---

[119] Rec. Doc. 26 at 2–3.

[120] *Id.* at 4.

[121] *Id.* at 6.

[122] For example, Plaintiff "denies" Defendant's assertion that "Once the cylinders were weighed, the contractor would tighten the nut on the rod to make sure the angle iron bracket was securing the cylinders in place." Rec. Doc. 26-2 at 7. However, Plaintiff goes on simply to specify that it was FPS, and not any other contractor, that would perform this task—a clarification that, if anything, strengthens rather than harms Defendant's argument. *Id.*

[123] Rec. Doc. 26 at 6.

[124] *See Teply v. Mobil Oil Corp.*, 859 F.2d 375, 379 (5th Cir. 1988); *Ponce ex rel. Estate of Ponce v. M/V ALTAIR*, 493 F. Supp. 2d 880, 893 (S.D. Tex. 2007).

can perform stevedoring operations with reasonable safety, and to warn the stevedore of hidden or latent dangers that are known or should be known to the vessel owner, is that the vessel crew "should have known" that the third row of cylinders could not be accessed without some means of elevation, and Defendant did not place warning signs in the room telling people not to use the brackets as a step.[125] Furthermore, Tauzier alleges that there is "no evidence that Southtank took any measures to inspect the $CO_2$ room to insure that the cylinder brackets had not loosened from vibration of the engine," but once again, Tauzier has the burden to prove at trial that Southtank *was* negligent.

A vessel owner has no duty to oversee a contractor's work to ensure that it is conducted safely.[126] Indeed, a vessel is entitled to rely on the contractor's expertise to perform his job with reasonable precautions, and the contractor, not the vessel, had a duty to require its employees to use safety equipment.[127] Furthermore, the responsibility of the vessel owner to warn of hidden dangers is narrow and encompasses only those hazards that are known to the vessel owner and not known to the stevedore.[128] "It does not include dangers which are either (1) open and obvious, or (2) something a reasonably competent stevedore should anticipate encountering."[129] Furthermore, the "open and obvious" defense applies not only to the duty to warn, but also to the duty to turn over a vessel in a reasonably safe condition.[130]

---

[125] Rec. Doc. 26 at 7.

[126] *Hill v. Texaco, Inc.*, 674 F.2d 447, 451 (5th Cir. 1982).

[127] *Id.*

[128] *See Howlett v. Birkdale Shipping Co., S.A.*, 512 U.S. 92, 105 (1994).

[129] *Clay v. Daiichi Shipping*, 74 F. Supp. 2d 665, 670 (E.D. La. 1999) (Fallon, J.) (citing *Howlett*, 512 U.S. at 105; *Wilfred v. M/V CAPE CORNWALL*, No. 97–0008, 1997 WL 567948, at *2 (E.D. La. Sept. 9, 1997)).

[130] *See Kirksey v. Tonghai Mar.*, 535 F.3d 388, 395 (5th Cir. 2008).

Southtank does not appear to contend that the fact that the bracket could shift under one's weight was an "open and obvious" defect; rather, Southtank argues that not only should a reasonably competent stevedore have anticipated the danger, but that Tauzier has in fact testified that he was aware of the possible danger and was guarding against it.[131] Indeed, Plaintiff does not dispute that "[b]efore stepping on each angle iron, plaintiff checked the security of the securing bracket by pushing down on one end of the angle iron with one hand and pulling up the other end of the angle iron with the other hand."[132] Moreover, Plaintiff admits that he did so because "he knew the bracket might move and that one of the risks of stepping on one of these brackets was that it could move or shift under his weight."[133] Finally, Plaintiff even acknowledges that just prior to his accident, he performed this check on the lower securing bracket from which he subsequently fell, and found that it felt tight and was firmly in place.[134] Where it is undisputed that an independent contractor is so aware of a potential danger from stepping on a bracket that he in fact tests each one prior to doing so, the Court cannot conclude that the vessel owner failed to warn Tauzier of a hidden danger of which it knew or should have known.

Furthermore, the Fifth Circuit has "long held that when an independent contractor has actual knowledge of a remediable hazardous condition[,] the vessel owner's turnover duty is not implicated unless the contractor's 'only alternatives would be to leave his job or face trouble for

---

[131] Rec. Doc. 22-1 at 18.

[132] Rec. Doc. 26-2 at 5.

[133] *Id.*

[134] *Id.*

delaying work.'"[135] Plaintiff has made no such allegation in this case, and the Court has found no evidence in the record to suggest that Plaintiff had no alternative. In fact, Plaintiff has admitted that if he had wanted to bring a ladder aboard the vessel, he could have done so, that he did not ask anyone aboard the Vessel for a ladder, that after the accident, he was told by the FPS office manager, Casey Burkett, that he should have used a ladder to access the Row C cylinder valves, and that, in the future, he would start using a ladder and not stand on the brackets to avoid another fall.[136] Therefore, there is no evidence in the record to suggest that Plaintiff would have faced any negative repercussion whatsoever had he taken steps to remedy the hazardous condition of which he had actual knowledge. As such, where the independent contractor had actual knowledge of the danger and had means of avoiding it, "the vessel owner's turnover duty is not implicated."[137]

### 2. Duty to Intervene

A vessel has a duty to intervene when it has actual knowledge of a dangerous condition and actual knowledge that the stevedore, in the exercise of "obviously improvident" judgment, has failed to remedy it.[138] The duty to intervene "is narrow and requires 'something more' than mere shipowner knowledge of a dangerous condition."[139] In fact, the Fifth Circuit has recognized that, in some situations, the vessel owner is entitled to rely on the stevedore's judgment that the condition, "though dangerous, was safe enough."[140]

---

[135] *Manuel v. Cameron Offshore Boats, Inc.*, 103 F.3d 31, 34 (5th Cir. 1997) (quoting *Morris v. Compagnie Maritime Des Chargeurs Reunis, S.A.*, 832 F.2d 67, 70 (5th Cir. 1987)).

[136] Rec. Doc. 26-2 at 8.

[137] *See Manuel*, 103 F.3d at 34.

[138] *Pimental*, 965 F.2d at 17.

[139] *Singleton v. Guangzhou Ocean Shipping Co.*, 79 F.3d 26, 28 (5th Cir. 1996)).

[140] *Randolph v. Laeisz*, 896 F.2d 964, 971 (5th Cir. 1990).

Here, Plaintiff argues that Defendant breached the Duty to Intervene because the ship's personnel had a duty to advise the FPS personnel of the bracket condition, but no such warning or intervention was ever undertaken.[141] In short, Tauzier's argument essentially rehashes the bases of its argument that Defendant had a duty to warn of an unsafe condition when it turned over the $CO_2$ room to FPS. Southtank responds that there is no evidence to support Plaintiff's argument that Defendant breached the Duty to Intervene, as Tauzier cannot show that the Vessel's crew had actual knowledge that the FPS personnel were engaging in any unsafe work practice in the $CO_2$ room, actual knowledge that the FPS personnel were standing on the brackets in the Vessel's $CO_2$ room, or actual knowledge that the FPS personnel needed ladders to perform their work safely in the $CO_2$ room.[142]

In *Pimental v. LTD Canadian Pacific Bul*, the Fifth Circuit upheld a district court's decision to grant a directed verdict in favor of a vessel where a plaintiff had alleged that the defendant must have known that there was oil and grease on a passageway because there was some evidence that the dangerous condition existed at the outset of the stevedoring operation.[143] There, the court found that even if there was arguably sufficient evidence from which a reasonable jury could conclude that the defendant had actual knowledge of the dangerous condition, there was not sufficient evidence to support the conclusion that the vessel had "actual knowledge that it could not rely on the stevedore to protect its employees and that if unremedied the condition posed a substantial risk of danger," nor that the defendant had actual knowledge that the stevedore had not

---

[141] Rec. Doc. 26 at 8.

[142] Rec. Doc. 33 at 10.

[143] 965 F.2d 13, 17 (5th Cir. 1992)

remedied the dangerous condition.[144] Similarly, here, the Court can find no citation to any record evidence provided by Plaintiff to suggest that Southtank had "actual knowledge" of a dangerous condition. Even if the Court were to agree with Plaintiff that Southtank "should have known" about the condition of the securing bracket, Plaintiff nevertheless provides no evidence to show that Southtank actually knew that Tauzier was engaged in an unsafe work practice, or that it could not rely on FPS to protect its employees and that, if unremedied, the condition of the bracket posed a substantial risk of danger. Therefore, Defendant has successfully met its burden of showing that there is insufficient evidence in the record to support an element of Plaintiff's claim, and summary judgment as a matter of law is warranted in favor of Defendant.

### IV. Conclusion

Accordingly,

**IT IS HEREBY ORDERED** that Southtank's "Motion for Summary Judgment"[145] is **GRANTED.**

**NEW ORLEANS, LOUISIANA,** this 29th day of April, 2016.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[144] *Id.* (quoting *Randolph*, 896 F.2d at 971).

[145] Rec. Doc. 22.